**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Martha Inchaurregui Smith, | No. CV-19-04475-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Before the Court is Plaintiff Martha Inchaurregui Smith's challenge to the Social Security Administration ("SSA")'s denials of her disability benefits applications. For the reasons expressed herein, the Court affirms the Administrative Law Judge's ("ALJ") decision.

**I.    BACKGROUND**

This case deals with the denial of Ms. Smith's second application for social security disability benefits. (Doc. 1 at 2.) The ALJ's decision in this case relied, in part, on certain findings in a prior benefit denial decision (the "2014 decision."). (*Id*. at 4.) After considering the record, the ALJ found that Ms. Smith had thoracic degenerative disc and joint disease and radiculopathy, chronic obstructive pulmonary disease ("COPD"); and chronic pain syndrome. (R. at 18.) Ultimately, however, the ALJ concluded that Ms. Smith could, with certain limitations, perform her past relevant work as an adult education teacher. (R. at 24.) The ALJ found that Ms. Smith did not make the requisite showing that

her ability to work had lessened since the 2014 decision. (R. at 16.) Alternately, the ALJ found that Ms. Smith was not disabled. (R. at 25.) This ruling became final when the Appeals Council denied Ms. Smith's request for review. (R. at 1-2.) Ms. Smith now appeals the ALJ decision in this Court.

## II.     LEGAL STANDARD

The district court reviews only those issues in an ALJ's decision that the challenging party raises. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the agency's determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* The Court reviews the ALJ's legal conclusions *de novo*. *Mendoza-Pablo v. Holder*, 667 F.3d 1308, 1312 (9th Cir. 2012).

An ALJ follows a five-step process to determine whether a plaintiff is disabled. "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the ALJ determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the ALJ determines whether the claimant's impairment(s) is enumerated in a certain federal regulatory provision or is the equivalent of one of those conditions. 20 C.F.R. § 404.1520(a)(4)(iii). At step four, the ALJ assesses the extent of the claimant's ability to work and determines whether the claimant is capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to step five, which analyzes several factors to assess whether a claimant can perform another type of work. 20 C.F.R. § 404.1520(a)(4)(v). A claimant who can perform other work is disabled, whereas a claimant who cannot is disabled. *Id.* The claimant bears the burden of proof at

the first four steps.  *Tackett*, 180 F.3d at 1098.  Then the burden shifts to the Social Security Administration.  *Id*.

*Res judicata* may apply to administrative decisions.  20 C.F.R. §§ 404.957(c)(1), 416.1457(c)(1).  The Ninth Circuit has held that if a claimant is found not disabled, a presumption of continuing non-disability arises.  *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).   The claimant can rebut the presumption by showing "changed circumstances," such as an increase in the severity of an impairment or the existence of a new impairment.  *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995).  If the claimant rebuts the presumption, the initial ALJ's findings concerning the claimant's age, education, and ability to work may be entitled to preclusive effect.  *Chavez*, 844 F.2d at 694.  The ALJ may reconsider those issues only if the claimant produces new and material evidence relevant to those issues or there has been a change in the applicable law and regulations.  *Id.*

### III.    ANALYSIS

Ms. Smith raises three issues for the Court's consideration: (1) The ALJ should have introduced into the record the evidence upon which the first 2014 decision relied.  Failure to do so, according to Ms. Smith, was a due process violation and reversible error; (2) The ALJ erred by rejecting Ms. Smith's symptom testimony; and (3) the ALJ erred by rejecting the opinions of Ms. Smith's treating physicians.  The Court finds that the ALJ did not commit reversible error and accordingly affirms the decision.

#### A.    Due Process

Ms. Smith argues that the ALJ in this case committed reversible error by failing to introduce into the record the evidence upon which the 2014 decision relied. (Pl. Br. at 15.)  She further argues that this deprived her of the opportunity to rebut the ALJ's finding that she did not produce the requisite new evidence of a changed circumstance. (Pl. Br. at 15.)  Relatedly, Ms. Smith argues that the ALJ violated her due process rights by relying on the 2014 decision rather than the evidence underlying it. (Pl. Br. at 16.)  The Court disagrees.

Ms. Smith has not alleged a colorable claim of a due process violation. Her assertion that the ALJ improperly relied on the 2014 decision, rather than the evidence underlying it, does not sustain a claim for a due process violation because she had an opportunity to be meaningfully heard. *Ludwig v. Astrue*, 681 F.3d 1047, 1053 (9th Cir. 2012). Nor does the Court find that the ALJ committed reversible error. Ms. Smith cites no legal authority to support her argument that an ALJ is required to admit certain evidence or cannot rely on prior administrative decisions. Moreover, although the ALJ found that Ms. Smith failed to provide new and material evidence of changed circumstances, the ALJ also determined, in the alternative, that Ms. Smith was not disabled for the period at issue. Accordingly, the ALJ's finding that Ms. Smith did not provide new and material evidence of a changed circumstance was, at most, harmless error.

### B. Symptom Testimony

The ALJ gave four reasons for rejecting Ms. Smith's symptom testimony. First, Ms. Smith has a documented history of substance abuse. (R. at 21–23.) Second, there were inconsistencies between her testimony and the record. (R. at 21–22.) Third, the objective medical evidence did not support her alleged limitations. (R. at 21–22.) Fourth, Ms. Smith's daily activities indicate that she is more functional than alleged.[*] (R. at 21–22.) The Court finds that the ALJ's rationale was sufficient.

While credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ may consider whether objective medical evidence supports the claimant's testimony, but that cannot be the sole basis for an adverse credibility finding. *Burch v. Barnhart*, 400 F.3d

---

[*] The ALJ's finding that Ms. Smith's daily activities suggest she is capable of performing light work is not supported by substantial evidence. The ALJ must determine the extent to which the claimant engages in activities in order to conclude she is capable of work. *See Zavalin v. Colvin*, 778 F.3d 842, 848 (9th Cir. 2014). Nevertheless, because the ALJ gave other reasons for her adverse credibility finding, her erroneous reliance on Ms. Smith's daily activities was harmless. *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

676, 681 (9th Cir. 2005). The ALJ may also consider the claimant's daily activities, inconsistent statements, and course of treatment. *Id.*

The ALJ's finding that Ms. Smith's symptom testimony was undermined by her history of prescription drug abuse is specific, clear and convincing, and supported by substantial evidence. The ALJ may properly reject the claimant's symptom testimony if she exhibits drug-seeking behavior during her alleged period of disability. *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001). The ALJ cited multiple treatment records in which Ms. Smith's treating providers noted her prescription drug misuse. (R. at 755, 1369, 1400, 1873, 2016, 2171.) Ms. Smith argues that her husband reported her overuse of pain medications because they were divorcing during the relevant period. (Pl. Br. at 25.) However, many of the reports are based on the providers' direct observations, rather than statements made by her husband. Ms. Smith also argues that her substance abuse is unrelated to her symptoms and is only relevant to a judgment about her willpower or moral rectitude. (Pl. Br. at 25.) The Court disagrees. The ALJ is responsible for determining credibility, and a claimant's misuse of prescribed medication may call into question the legitimacy of her complaints. *See Edlund*, 253 F.3d at 1157; *Anderson v. Barnhart*, 344 F.3d 809, 815 (8th Cir. 2003). The ALJ properly considered Ms. Smith's misuse of pain medications and relied on it as a basis to discredit her symptom testimony.

The ALJ's finding that Ms. Smith's testimony was inconsistent with her previous statements to treatment providers is also specific, clear and convincing, and supported by substantial evidence. When evaluating the credibility of the claimant's symptom testimony, the ALJ may consider the claimant's prior inconsistent statements concerning the alleged severity of her symptoms. *Smolen*, 80 F.3d at 1284. Ms. Smith testified that her pain was over 10/10 without medication, and that it improved to 8/10 with medication. (R. at 306.) Yet, treatment records reflect that she experienced significant relief—50 to 100 percent—from pain medications and steroid injections. (R. at 22.) Thus, Ms. Smith's testimony regarding her response to treatment was inconsistent with her previous statements to her treatment providers and was a sufficient basis to discredit her testimony.

Finally, the ALJ's finding that Ms. Smith's alleged limitations were not supported by objective medical evidence is supported by substantial evidence. An ALJ may consider, but not solely rely on, a lack of objective evidence to discredit the claimant's testimony. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). The ALJ observed that aside from acute COPD exacerbations, Ms. Smith's clinical findings were generally benign. (R. at 21.) For example, a December 2015 chest x-ray was unremarkable. (R. at 1247.) On one occasion, Ms. Smith went to the emergency room complaining of shortness of breath, but upon examination, she demonstrated no shortness of breath and her oxygen levels were normal. (R. at 1400.) Later, Ms. Smith's pulmonologist observed that her airways were only minimally obstructed. (R. at 1810.) Finally, as the SSA points out, many of Ms. Smith's respiratory examinations were unremarkable. (R. at 756, 759–60, 763–64, 767, 773–74, 777–78, 1792–93, 1797.) Notably, in determining Ms. Smith's residual functional capacity – which measures how much work she can do despite her disability, the ALJ accounted for Ms. Smith's acute COPD exacerbations by limiting her to light levels of exertion and environments free of pulmonary irritants. (R. at 21.)

Regarding Ms. Smith's back pain, the ALJ found that the objective evidence suggests that she experiences some pain and limitations but not to the extent alleged. (R. at 22.) For example, one MRI showed that she had mild to moderate degenerative changes in her spine, and she received epidural steroid injections to alleviate her pain. (R. at 22.) However, many physical examinations showed that Ms. Smith had a normal range of motion. (R. at 22.) Additionally, she appeared at a hearing with a cane and testified that she needs a cane or walker to walk, but the record does not support this. Though she was recorded to have a slow gait and mild limp on occasion, the record is lacks evidence that she required an assistive device to walk.

In sum, substantial evidence supports the ALJ's finding that the objective evidence does not support the alleged severity of Ms. Smith's limitations. Contrary to Ms. Smith's assertions, the ALJ is responsible for resolving conflicts and ambiguities in the medical

evidence. Though Ms. Smith argues for a more favorable reading of the evidence, the ALJ's interpretation was rational, and the Court will uphold it. *Thomas*, 278 F.3d at 954.

### C.     Rejecting the Opinions of Ms. Smith's Physicians

Ms. Smith's final argument is that the ALJ improperly rejected the opinions of her treating physicians, Drs. Abdullah M. Yonan, Andrea Irving, and J. Julian Grove. Instead, the ALJ gave significant weight to the opinions of the examining physician and state agency consultants. (R. at 23.) The ALJ's findings are supported by substantial evidence and do not constitute error.

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester*, 81 F.3d at 830. In general, a treating physician's opinion should be given controlling weight. *Id.* The ALJ may reject a treating physician's contradicted medical opinion only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Carmickle*, 533 F.3d at 1164. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

#### 1.     The ALJ properly rejected Dr. Yonan's opinion.

The ALJ first considered a Respiratory Questionnaire by Dr. Yonan. (R. at 786–87.) He opined that Ms. Smith has slight shortness of breath at rest and moderate shortness of breath when walking on level ground. (R. at 786.) This shortness of breath would have a moderate impact on her work production, a slight impact on her ability to carry out short and simple instructions, and no impact on her ability to speak easily, understand and remember detailed instructions, interact with others, and respond appropriately to work pressures. (R. at 786.) Dr. Yonan opined that Ms. Smith can sit for two hours at a time and two hours total in an eight-hour workday; stand and walk for no amount of time; and

- 7 -

rarely lift or carry fewer than five pounds. (R. at 787.) The ALJ properly rejected Dr. Yonan's opinion because it was not only inconsistent with Ms. Smith's treatment records but also internally inconsistent. (R. at 23.)

The ALJ need not accept a medical opinion that is brief, conclusory, or inadequately supported by treatment records. *Thomas*, 278 F.3d at 957. As previously discussed, the ALJ correctly found that Ms. Smith's COPD was well controlled aside from rare, acute exacerbations. (R. at 21, 23.) Many of Ms. Smith's respiratory examinations, including those Dr. Yonan performed, were unremarkable. (R. at 21, 753, 756, 759, 763, 767, 770, 774, 777.) Though Dr. Yonan's records include Ms. Smith's reports that her COPD symptoms were moderately severe, the ALJ was not required to accept those complaints because they were properly discredited. *See Evenhus v. Astrue*, 815 F. Supp. 2d 1154, 1160 (D. Or. 2011) (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)).

The ALJ also properly rejected Dr. Yonan's opinion because of its internal inconsistencies. *See Morgan*, 169 F.3d at 603. Despite finding that Ms. Smith had no limitations in most functional areas and moderate limitations in only two areas, Dr. Yonan opined that Ms. Smith could not stand or walk for any length of time. (R. 787.) The ALJ was not required to accept Dr. Yonan's opinion after finding that it was unreasonable given Dr. Yonan's other findings. *See Morgan*, 169 F.3d at 601.

In sum, the Court finds that the ALJ properly rejected Dr. Yonan's opinion because of its inconsistency with the record as a whole and its internal inconsistencies.

**2.     The ALJ properly rejected Dr. Irving's opinion.**

Next, the ALJ considered a Medical Assessment by Dr. Irving. (R. at 1335–37.) Dr. Irving opined that Ms. Smith can sit for 20 minutes at a time and four hours total in an eight-hour workday; continuously stand and walk for 30 minutes at a time with the assistance of a walker and two hours total in an eight-hour workday; and occasionally lift and carry up to five pounds. (R. at 1335–36.) Dr. Irving further indicated that Ms. Smith has severe limitations in her elbow due to an unhealed fracture. (R. at 1337.) The ALJ

rejected Dr. Irving's assessment because: (1) the overall record does not support Ms. Smith's need for a walker or difficulty using her left arm; and (2) Dr. Irving is an emergency room provider who examined her on one occasion. (R. at 23.)

The ALJ's finding that Dr. Irving's opinion was inconsistent with Ms. Smith's treatment records is supported by substantial evidence. The ALJ was not required to give weight to Dr. Irving's opinion to the extent it was inconsistent with other evidence of record. *See Evenhus*, 815 F. Supp. 2d at 1160 (citing *Magallanes*, 881 F.2d at 751–52) ("The ALJ may reject a treating physician's opinion in cases in which objective test results, reports from other physicians, testimony from the claimant, or other evidence conflicts with the opinion."). Dr. Irving opined that Ms. Smith requires the assistance of a walker to be able to stand or walk for 30 minutes at a time. (R. at 1335.) However, as previously discussed, the record lacks objective evidence that she needs an assistive device to walk. Notably, Ms. Smith's other treating physicians denied that she used an assistive device. Accordingly, the ALJ properly discounted Dr. Irving's opinion because of its inconsistency with other evidence.

The ALJ also properly considered the brief nature of Dr. Irving's treatment relationship with Ms. Smith. When evaluating how much weight to afford a medical opinion, the ALJ may consider the nature of the treatment relationship. 20 C.F.R. § 404.1527(c)(2). Generally, the ALJ will give greater weight to the opinion of a source that has a detailed understanding of the claimant's impairments, developed over the course of time. *Id.* These sources often have a unique perspective that cannot ordinarily be obtained from individual examinations, like brief hospitalizations. *Id.* Though the ALJ incorrectly identified Dr. Irving as an emergency room physician who saw Ms. Smith on one occasion, this mischaracterization was harmless because substantial evidence supports her decision. *See Tommasetti*, 533 F.3d at 1038. Dr. Irving, a physician at Black Canyon Health, saw Ms. Smith on two occasions—once to follow up after her hospitalization for sepsis, and again about a month later to complete disability paperwork. (R. at 1377–80.) However, this additional appointment does not impact the validity of the ALJ's decision

because substantial evidence shows that Dr. Irving's relationship with Ms. Smith was brief and therefore properly afforded less weight. *See Carmickle*, 533 F.3d at 1162.

In sum, the Court finds that the ALJ properly rejected Dr. Irving's assessment because it was inconsistent with other evidence of record and because of her brief relationship with Ms. Smith.

**3.     The ALJ properly rejected Dr. Grove's opinion.**

Finally, the ALJ considered two medical assessments Dr. Grove completed. (R. at 1816–19.) He opined that Ms. Smith can sit for 10 to 45 minutes at a time and three hours total in an eight-hour workday; stand and walk for 15 to 30 minutes at a time and two hours total in an eight-hour workday; and occasionally lift and carry up to ten pounds. (R. at 1816.) Ms. Smith's pain would result in severe limitations, and her fatigue would result in moderate to marked limitations and cause her to miss one to 15 days of work per month. (R. at 1819.)  Because Dr. Grove's own treatment records were inconsistent with his assessments, the ALJ rejected them. (R. at 24.)

The ALJ properly rejected Dr. Grove's assessments because of their inconsistencies with Ms. Smith's treatment records. *See Thomas*, 278 F.3d at 957. As previously discussed, the ALJ found that Ms. Smith's medical records do not support her subjective reports of pain. Similarly, the ALJ determined that Dr. Grove's opined-to limitations are also unsupported by the treatment records. For example, Dr. Grove noted that Ms. Smith responded well to treatment, reporting that she experienced 50 to 99 percent relief from injections and medications. (R. at 22.) The ALJ also found that many of Ms. Smith's physical examinations were unremarkable and suggest few functional limitations. (R. at 22, 24.) These findings are inconsistent with Dr. Grove's assessments regarding Ms. Smith's functional limitations, and the ALJ was therefore permitted to reject Dr. Grove's opinion.

Ms. Smith argues that the ALJ failed to cite to the record, making judicial review impossible. (Pl. Br. at 19.) However, the ALJ discussed Ms. Smith's medical records earlier in her decision, and she was not required to methodically cite those records again.

- 10 -

*See Magallanes*, 881 F.2d at 755 (finding that a court is permitted to draw reasonable inferences where it is clear the ALJ relied on facts and evidence contained elsewhere in her opinion). The ALJ properly evaluated the pertinent facts and evidence and did not err by rejecting Dr. Grove's opinion.

In sum, the Court finds that the ALJ properly rejected the opinions of Ms. Smith's treating physicians by providing specific and legitimate reasons that are supported by substantial evidence.

**IV.   CONCLUSION**

Accordingly,

**IT IS ORDERED** affirming the July 13, 2018 decision of the Administrative Law Judge.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this matter.

Dated this 26th day of June, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge